

FILED
IN OPEN COURT

NOV 2 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CR-328 |
| | ) | |
| SAMSUNG HEAVY INDUSTRIES CO. LTD. | ) | Hon. T.S. Ellis III |
| | ) | |
| Defendant | ) | |
| | ) | |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times relevant to this Information, unless otherwise stated:

### GENERAL ALLEGATIONS

#### The Foreign Corrupt Practices Act

1.    The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1 *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

#### Relevant Entities and Individuals

2.    The defendant SAMSUNG HEAVY INDUSTRIES COMPANY LIMITED ("SAMSUNG HEAVY INDUSTRIES," "SHI," or "the Company") was an engineering company headquartered in the Republic of Korea ("South Korea") that provided shipbuilding, offshore platform construction, and other construction and engineering services. Samsung

Heavy Industries maintained offices in several countries around the world, including a branch office in Houston, Texas. Samsung Heavy Industries was a "person" as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-3(f)(1).

3.      "SHI Senior Manager 1," a South Korean citizen whose identity is known to the Fraud Section and the Office and to the Company, was the manager of the Samsung Heavy Industries office in Houston. SHI Senior Manager 1 was a "person" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

4.      "SHI Senior Manager 2," a South Korean citizen whose identity is known to the Fraud Section and the Office and to the Company, was a senior manager of Samsung Heavy Industries who was based in Seoul, South Korea. SHI Senior Manager 1 reported to SHI Senior Manager 2 during SHI Senior Manager 1's tenure as manager of Samsung Heavy Industries' Houston office.

5.      "Chartering Company" was an offshore oil drilling company headquartered in Houston, Texas which provided contract drilling and related services to oil and gas companies.

6.      Petróleo Brasileiro S.A. – Petrobras ("Petrobras") was a Brazilian state-controlled oil company. Petrobras was headquartered in Rio de Janeiro, Brazil, and operated to produce, refine, and distribute oil, oil products, gas, biofuels, and energy. During the relevant time period, the Brazilian government directly owned approximately 50.3 percent of Petrobras's common shares with voting rights, while an additional ten percent of Petrobras's shares were controlled by the Brazilian Development Bank and Brazil's Sovereign Wealth Fund. Petrobras was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A). Petrobras officers and employees were

"foreign officials" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

7.    "Brazilian Official 1," a Brazilian citizen whose identity is known to the Fraud Section and the Office and to the Company, was an executive of Petrobras.  Brazilian Official 1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2).

8.    "Brazilian Official 2," a Brazilian citizen whose identity is known to the Fraud Section and the Office and to the Company, was executive senior manager of Petrobras. Brazilian Official 1 was a "foreign official" within the meaning of the FCPA, Title 15, United States Code, Section 78dd-3(f)(2).

9.    "Brazilian Agent 1," a Brazilian citizen whose identity is known to the Fraud Section and the Office and to the Company, was a consultant offering intermediary and advisory services to entities seeking business with Petrobras.

10.    "Brazilian Agent 2," a Brazilian citizen whose identity is known to the Fraud Section and the Office and to the Company, was an intermediary for bribe payments made to Brazilian Official 1 and Brazilian Official 2.

11.    "Intermediary Company 1," the identity of which is known to the Fraud Section and the Office and to the Company, was a British Virgin Islands company controlled by Brazilian Agent 1 that was used for the purpose of receiving payments from Samsung Heavy Industries and making and concealing bribe payments to Petrobras officials on behalf of Samsung Heavy Industries and others.

12.    "Intermediary Company 2," the identity of which is known to the Fraud Section and the Office and to the Company, was a British Virgin Islands company controlled by

3

Brazilian Agent 2 that was used for the purpose of receiving payments from Samsung Heavy Industries and making and concealing bribe payments to Petrobras officials on behalf of Samsung Heavy Industries and others.

### Overview of the Bribery Scheme

13.     Beginning in or about 2007 and continuing until in or about 2013, Samsung Heavy Industries knowingly and willfully conspired and agreed with others to corruptly provide payments to, and for the benefit of, foreign officials to secure an improper advantage and to influence those foreign officials in order to obtain and retain business with Petrobras, to wit: the sale of an offshore oil drillship to Chartering Company which would then be chartered to Petrobras.

*The Option Drillship Agreement*

14.     In or around 2006, Samsung Heavy Industries and Chartering Company began discussing potential projects in Brazil, including potential deals in which Samsung Heavy Industries would construct one or more oil drillships for Chartering Company, which Chartering Company would then charter to Petrobras.

15.     In or about June 2007, Samsung Heavy Industries entered into an option agreement with Chartering Company, which gave Chartering Company the right but not the obligation to purchase a newly constructed offshore oil drillship from Samsung Heavy Industries (the "Option Drillship") with the same specifications as another oil drillship purchased in the recent past by Chartering Company from Samsung Heavy Industries.  Negotiations between Samsung Heavy Industries and Chartering Company were handled primarily by SHI Senior Manager 1 from Samsung Heavy Industries' office in Houston, Texas.

16.     Samsung Heavy Industries understood that Chartering Company would only exercise its option to purchase the Option Drillship if Chartering Company secured a contract

4

with Petrobras to charter the Option Drillship to Petrobras. Thus, Samsung Heavy Industries and Chartering Company were both incentivized for Chartering Company to secure a contract with Petrobras.

*Samsung Heavy Industries' Hiring of Brazilian Agent 1*

17.    Samsung Heavy Industries engaged Brazilian Agent 1, in part, to make payments to Petrobras officials in order to increase the chance that Petrobras would charter the Option Drillship from Chartering Company, and thus increase the chance that Chartering Company would purchase the Option Drillship from Samsung Heavy Industries.

18.    SHI Senior Manager 1 met with Brazilian Agent 1 in Rio de Janeiro, Brazil in or around June 2007 to discuss Samsung Heavy Industries' potential engagement of Brazilian Agent 1 as its agent for the Option Drillship deal with Chartering Company.

19.    During another trip to Rio de Janeiro, Brazil, in or around June 2007, SHI Senior Manager 1 also had individual meetings with Brazilian Official 1 and Brazilian Official 2 to discuss the possibility that Petrobras would employ the Option Drillship built by Samsung Heavy Industries for Petrobras's expected chartering deal with Charting Company.

20.    After SHI Senior Manager 1's trips to Brazil in or around June 2007, SHI Senior Manager 1 conferred with SHI Senior Manager 2, who agreed that Samsung Heavy Industries would retain Brazilian Agent 1 as its agent, and Samsung Heavy Industries informally agreed to pay Brazilian Agent 1 $20 million to serve as Samsung Heavy Industries' agent on the Option Drillship deal with Chartering Company, contingent on consummation of the deal. In connection with the deal, Brazilian Agent 1 engaged Brazilian Agent 2 to assist with corrupt payments to the Petrobras officials and to split the $20 million payment with Brazilian Agent 2.

21.    Samsung Heavy Industries increased the price it charged Chartering Company for the Option Drillship by $20 million to offset the $20 million it agreed to pay Brazilian Agent 1.

5

22.     On or about October 18, 2007, Samsung Heavy Industries formalized its agreement to pay Brazilian Agent 1 $20 million by executing a commission agreement with Intermediary Company 1 and Intermediary Company 2, which called for a total of $20 million in commission payments to be split evenly between Intermediary Company 1 and Intermediary Company 2. Under the terms of the commission agreement, Samsung Heavy Industries agreed to pay Intermediary Company 1 and Intermediary Company 2 in installments based on Samsung Heavy Industries' scheduled receipt of milestone payments from Chartering Company during construction of the Option Drillship.

*Samsung Heavy Industries' Knowledge of Bribes Paid to Brazilian Officials*

23.     Prior to executing the agreement with Intermediary Company 1 and Intermediary Company 2, and prior to making the $20 million in payments pursuant to the agreement, SHI Senior Manager 1 and others became aware that Brazilian Agent 1 would use a portion of the money received from Samsung Heavy Industries to pay bribes to Petrobras officials in association with the chartering of the Option Drillship.

24.     In or around December 2007, SHI Senior Manager 1 spoke to Brazilian Agent 1 by telephone from SHI Senior Manager 1's office in Houston. SHI Senior Manager 1 asked Brazilian Agent 1 what Brazilian Agent 1 planned to do with the $20 million in commission payments Samsung Heavy Industries had agreed to pay to Intermediary Company 1 and Intermediary Company 2 in connection with the Option Drillship. Brazilian Agent 1 told SHI Senior Manager 1 that portions of the $20 million commission would be paid as bribes to two Petrobras officials, and it was SHI Senior Manager 1's understanding that Brazilian Official 1 and Brazilian Official 2 would be the bribe recipients.

25.     On or about December 14, 2007, SHI Senior Manager 1 wrote an email to several South Korea-based Samsung Heavy Industries employees, including SHI Senior Manager 2,

from SHI Senior Manager 1's office in Houston.  In the email, SHI Senior Manager 1 recounted

a call the Houston office had received from a Petrobras employee acting at the direction of

Brazilian Official 1.  In the email, SHI Senior Manager 1 wrote that Petrobras expected to

approve a chartering agreement with Chartering Company at an upcoming meeting of Petrobras

division directors.  SHI Senior Manager 1 also wrote that, regarding the "commission fee"

Samsung Heavy Industries would pay on the Option Drillship, two Petrobras officials would

"consult and divide among themselves within the amounts promised by SHI, but are to take care

of this matter after [Board of Directors] approval."  SHI Senior Manager 1 understood when he

wrote the December 14, 2007 email that the two Petrobras directors were Brazilian Official 1 and

Brazilian Official 2.

*Contract Execution and Samsung Heavy Industries' Payments to the Intermediary Companies*

26.      On or about December 18, 2007, Petrobras and Chartering Company executed a

"Heads of Agreement" document setting forth the main terms under which Petrobras planned to

enter into a chartering contract with Chartering Company.  The Heads of Agreement document

stated that Chartering Company would employ the Option Drillship for the chartering contract.

On or about December 21, 2007, Samsung Heavy Industries executed a contract with Chartering

Company, under which Chartering Company agreed to purchase the Option Drillship from

Samsung Heavy Industries for $636,040,000.  SHI Senior Manager 1 signed the contract and a

subsequent amendment on Samsung Heavy Industries' behalf.  The contract was amended by

Samsung Heavy Industries and Chartering Company on or about January 18, 2008 to state,

among other things, that Chartering Company's purchase of the Option Drillship was contingent

on Petrobras's final agreement to charter to the ship from Chartering Company.  Also on or

about January 18, 2008, Brazilian Official 1 signed the chartering contract on behalf of

7

Petrobras. The chartering contract specified that Chartering Company would use the Option Drillship to fulfill the chartering contract.

27.     Samsung Heavy Industries received commission invoices from Intermediary Company 1 and Intermediary Company 2 on or about February 15, 2008 and February 18, 2008, respectively. The invoices called for Samsung Heavy Industries to pay $4 million to each Intermediary Company. On or about March 13, 2008, Samsung Heavy Industries wired $4 million to each Intermediary Company, via correspondent banks in the United States.

28.     Samsung Heavy Industries received additional commission invoices from Intermediary Company 1 and Intermediary Company 2 on or about September 29, 2008 and October 13, 2008, respectively. The invoices called for Samsung Heavy Industries to pay $3 million to each Intermediary Company. On or about October 24, 2008, Samsung Heavy Industries wired $3 million to each Intermediary Company, via correspondent banks in the United States.

29.     Samsung Heavy Industries received the final commission invoices from Intermediary Company 1 and Intermediary Company 2 on or about February 7, 2011 and February 23, 2011, respectively. The invoices called for Samsung Heavy Industries to pay $3 million to each Intermediary Company. Samsung Heavy Industries wired $3 million to Intermediary Company 1 on or about March 10, 2011 and to Intermediary Company 2 on or about April 15, 2011, via correspondent banks in the United States.

*Receipt of Bribe Payments by Brazilian Official 1 and Brazilian Official 2*

30.     After receipt of the payments to Intermediary Company 2 by Samsung Heavy Industries, Brazilian Agent 2 caused portions of the money to be paid as bribes to Brazilian Official 1 and Brazilian Official 2, in furtherance of the bribery scheme.

31.     Brazilian Agent 2 paid Brazilian Official 1 in several installments, which together totaled approximately $1 million. The last payment Brazilian Official 1 received from Brazilian Agent 2 took place on or about May 31, 2013, when Brazilian Agent 2 caused approximately $114,000 to be transferred, via correspondent banks in the United States, from a bank account in Monaco to a bank account in Switzerland held for the benefit of Brazilian Official 1.

32.     Brazilian Agent 2 began paying bribes to Brazilian Official 2 in connection with the Option Drillship in or about 2011. In order to conceal the nature of the bribe payments, in or around April 2011, Brazilian Agent 2 caused Intermediary Company 2 to enter into a sham loan agreement with a Swiss shell company controlled by a French businessperson. Pursuant to the loan agreement, Intermediary Company 2 transferred $4 million from a bank account in Switzerland to an account controlled by the French businessperson on or about April 27, 2011.

33.     On or about June 21, 2011, the French businessperson transferred approximately $2 million back to Intermediary Company 2, as a purported partial repayment of the loan. On or about June 24, 2011, the French businessperson transferred approximately $2 million to a bank account in Monaco held for the benefit of Brazilian Official 2.

34.     Brazilian Official 1 and Brazilian Official 2 also received a payment from Brazilian Agent 1. During a meeting in or around April 2008, Brazilian Agent 1 agreed with Brazilian Official 1 and Brazilian Official 2 to provide an additional $1 million bribe in connection with the Option Drillship, which would be split between Brazilian Official 1 and Brazilian Official 2. On or about May 8, 2008, Brazilian Agent 1 caused $1 million to be transferred from a bank account in Switzerland controlled by Brazilian Agent 1 to a bank account in Hong Kong controlled by Brazilian Official 1 or Brazilian Official 2.

9

## COUNT ONE
## CONSPIRACY TO BRIBE FOREIGN OFFICIALS
### (18 U.S.C. § 371)

35.     The allegations contained in paragraphs one through 34 are realleged and incorporated as though fully set forth herein.

36.     In or about and between 2007 and 2013, both dates being approximate and inclusive, the defendant SAMSUNG HEAVY INDUSTRIES, together with others, did knowingly and willfully combine, conspire, confederate, and agree to commit offenses against the United States, to wit:  as a person other than an issuer or domestic concern, through and together with its officers, directors, employees, and agents, while in the territory of the United States, to willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce and to do any act in furtherance of an offer, payment, promise to pay, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of:  (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist the defendant SAMSUNG HEAVY INDUSTRIES and others in obtaining and retaining business for and with, and directing business to the defendant SAMSUNG HEAVY INDUSTRIES and others, contrary to Title 15, United States Code, Section 78dd-3.

## Overt Acts

37.      In furtherance of the conspiracy and to effect its objects, the defendant
SAMSUNG HEAVY INDUSTRIES, together with others, committed and caused to be
committed at least one of the following:

a.      In or around December 2007, while SHI Senior Manager 1 was located in
the United States, SHI Senior Manager 1 spoke to Brazilian Agent 1 by telephone, and Brazilian
Agent 1 told SHI Senior Manager 1 that bribes would be paid to two Petrobras officials.

b.      On or about December 14, 2007, while SHI Senior Manager 1 was located
in the United States, SHI Senior Manager 1 sent an email to several South Korea-based Samsung
Heavy Industries employees, including SHI Senior Manager 2.  In the email, SHI Senior
Manager 1 recounted a call the Houston office had received from a Petrobras employee acting at
the direction of Brazilian Official 1.  In the email, SHI Senior Manager 1 wrote that Petrobras
expected to approve a chartering agreement with Chartering Company at an upcoming meeting
of Petrobras division directors.  SHI Senior Manager 1 also wrote that, regarding the
"commission fee" Samsung Heavy Industries would pay on the Option Drillship, two Petrobras
officials would "consult and divide among themselves within the amounts promised by SHI, but
are to take care of this matter after [Board of Directors] approval."

c.      On or about October 18, 2007, SAMSUNG HEAVY INDUSTRIES
signed a $20 million commission agreement with Intermediary Company 1 and Intermediary
Company 2.

d.      On or about December 21, 2007, SAMSUNG HEAVY INDUSTRIES
executed a contract with Chartering Company to build the Option Drillship for a cost of
approximately $636,040,000.

e.      On or about January 19, 2008, SAMSUNG HEAVY INDUSTRIES executed an amendment to its contract with Chartering Company stating, among other things, that Chartering Company's purchase of the Option Drillship was contingent on Petrobras's final agreement to charter to the ship from Chartering Company.

f.      On or about March 13, 2008, SAMSUNG HEAVY INDUSTRIES caused $4 million to be transferred from a bank account in South Korea owned and controlled by SAMSUNG HEAVY INDUSTRIES, through correspondent bank accounts in the United States, to a bank account in Cyprus owned and controlled by Brazilian Agent 1.

g.      On or about March 13, 2008, SAMSUNG HEAVY INDUSTRIES caused $4 million to be transferred from a bank account in South Korea owned and controlled by SAMSUNG HEAVY INDUSTRIES, through correspondent bank accounts in the United States, to a bank account in Switzerland owned and controlled by Brazilian Agent 2.

h.      On or about May 8, 2008, Brazilian Agent 1 caused $1 million to be transferred from a bank account in Switzerland controlled by Brazilian Agent 1 to a bank account in Hong Kong controlled by Brazilian Official 1 and Brazilian Official 2.

i.      On or about October 24, 2008, SAMSUNG HEAVY INDUSTRIES caused $3 million to be transferred from a bank account in South Korea owned and controlled by SAMSUNG HEAVY INDUSTRIES, through correspondent bank accounts in the United States, to a bank account in Cyprus owned and controlled by Brazilian Agent 1.

j.      On or about October 24, 2008, SAMSUNG HEAVY INDUSTRIES caused $3 million to be transferred from a bank account in South Korea owned and controlled by SAMSUNG HEAVY INDUSTRIES, through correspondent bank accounts in the United States, to a bank account in Switzerland owned and controlled by Brazilian Agent 2.

k.       On or about March 10, 2011, SAMSUNG HEAVY INDUSTRIES caused
$3 million to be transferred from a bank account in South Korea owned and controlled by
SAMSUNG HEAVY INDUSTRIES, through correspondent bank accounts in the United States,
to a bank account in Antigua and Barbuda owned and controlled by Brazilian Agent 1.

l.       On or about April 15, 2011, SAMSUNG HEAVY INDUSTRIES caused
$3 million to be transferred from a bank account in South Korea owned and controlled by
SAMSUNG HEAVY INDUSTRIES, through correspondent bank accounts in the United States,
to a bank account in Switzerland owned and controlled by Brazilian Agent 2.

m.       On or about May 31, 2013, Brazilian Agent 2 caused approximately
$114,000 to be transferred from a bank account in Monaco, through correspondent banks in the
United States, to a bank account in Switzerland held for the benefit of Brazilian Official 1.

(In violation of Title 18, United States Code, Section 371.)

G. ZACHARY TERWILLIGER
United States Attorney
Eastern District of Virginia

Uzo Asonye, Assistant U.S. Attorney

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
United States Department of Justice

Jonathan P. Robell, Trial Attorney
Andrew Gentin, Acting Assistant Chief
Brian R. Young, Deputy Chief

13