FILED
IN OPEN COURT

2 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CR-328 |
| | ) | |
| SAMSUNG HEAVY INDUSTRIES CO. LTD. | ) | Hon. T.S. Ellis III |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFERRED PROSECUTION AGREEMENT

Defendant Samsung Heavy Industries Company Limited (the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B; and the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section") and the United States Attorney's Office for the Eastern District of Virginia (the "Office"), enter into this deferred prosecution agreement (the "Agreement").

### Criminal Information and Acceptance of Responsibility

1.     The Company acknowledges and agrees that the Fraud Section and the Office will file the attached one-count criminal Information in the United States District Court for the Eastern District of Virginia charging the Company with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371.  In so doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the

filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of Virginia. The Fraud Section and the Office agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.     The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the attached Statement of Facts, and that the allegations described in the Information and the facts described in the attached Statement of Facts are true and accurate. Should the Fraud Section and the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the attached Statement of Facts in any proceeding involving the Fraud Section or the Office, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the attached Statement of Facts at any such proceeding.

## Term of the Agreement

3.     This Agreement is effective for a period beginning on the date on which the Information is filed and ending three years from that date (the "Term"). The Company agrees, however, that, in the event the Fraud Section and the Office determine, in their sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to perform completely or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Fraud Section and the Office, in their sole discretion, for up to a total additional time period of one year, without prejudice to the Fraud Section's and the Office's right to proceed as provided in Paragraphs 14 through 18 below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment D, for an equivalent period. Conversely, in the event the

Fraud Section and the Office find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early. If the Court rejects the Agreement, all the provisions of the Agreement shall be deemed null and void, and the Term shall be deemed to have not begun.

### Relevant Considerations

4.      The Fraud Section and the Office enter into this Agreement based on the individual facts and circumstances presented by this case and the Company, including:

        a.      the Company did not receive voluntary disclosure credit because it did not voluntarily and timely disclose to the Fraud Section and the Office the conduct described in the Statement of Facts;

        b.      the Company would have received full credit for its cooperation with the Fraud Section's and the Office's investigation, including: (i) conducting a thorough internal investigation; (ii) making regular factual presentations to the Fraud Section; (iii) voluntarily making foreign-based employees available for interviews in the United States; and (iv) producing relevant documents to the Fraud Section and the Office from foreign countries accompanied by translations of key documents; but the Company did not receive full credit for its cooperation due to its failure to meet reasonable deadlines imposed by the Fraud Section and the Office and delays it caused in reaching a resolution;

        c.      the Company provided to the Fraud Section and the Office all relevant facts known to it, including information about the individuals involved in the conduct

described in the attached Statement of Facts and conduct disclosed to the Fraud Section

and the Office prior to the Agreement;

      d.     the Company engaged in significant remedial measures, including: (i)

making significant enhancements to the Company's compliance program, including

hiring  additional compliance staff, implementing enhanced anti-corruption policies and

improved whistleblower policies and procedures, and instituting mandatory anti-

corruption training for all employees; and (ii) the enactment of controls, including the

implementation of heightened due diligence controls over third party vendors, including

review by compliance professionals;

      e.     the Company has enhanced and has committed to continuing to enhance

its compliance program and internal controls, including ensuring that its compliance

program satisfies the minimum elements set forth in Attachment C to this Agreement

(Corporate Compliance Program);

      f.     based on the Company's remediation and the state of its compliance

program, and the Company's agreement to report to the Fraud Section and the Office as

set forth in Attachment D to this Agreement (Corporate Compliance Reporting), the

Fraud Section and the Office determined that an independent compliance monitor was

unnecessary in this case;

      g.     the nature and seriousness of the offense conduct, including the

involvement of the Company in a multi-year scheme to pay millions of dollars to officials

of Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), the state-controlled oil company of

Brazil;

      h.     the Company has no prior criminal history; and

i.     the Company has agreed to continue to cooperate with the Fraud Section and the Office in any ongoing investigation as described in Paragraph 5 below.

j.     Accordingly, after considering (a) through (i) above, the Fraud Section and the Office believe that the appropriate resolution in this case is a deferred prosecution agreement with the Company; an aggregate discount of 20 percent off of the bottom of the otherwise-applicable U.S. Sentencing Guidelines fine range; and the Company's agreement to report to the Fraud Section and the Office as set forth in Attachment D to this Agreement.

## Future Cooperation and Disclosure Requirements

5.     The Company shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the term specified in paragraph 3.  At the request of the Fraud Section and the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company, or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term.  The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Fraud Section and

the Office a log of any information or cooperation that is not provided based on an assertion of

law, regulation, or privilege, and the Company bears the burden of establishing the validity of

any such an assertion.  The Company agrees that its cooperation pursuant to this paragraph shall

include, but not be limited to, the following:

a.      The Company shall truthfully disclose all factual information with respect

to its activities, those of its present and former subsidiaries and affiliates, and those of its

present and former directors, officers, employees, agents, and consultants, including any

evidence or allegations and internal or external investigations, about which the Company

has any knowledge or about which the Fraud Section and the Office may inquire.  This

obligation of truthful disclosure includes, but is not limited to, the obligation of the

Company to provide to the Fraud Section and the Office, upon request, any document,

record or other tangible evidence about which the Fraud Section and the Office may

inquire of the Company.

b.      Upon request of the Fraud Section and the Office, the Company shall

designate knowledgeable employees, agents or attorneys to provide to the Fraud Section

and the Office the information and materials described in Paragraph 5(a) above on behalf

of the Company.  It is further understood that the Company must at all times provide

complete, truthful, and accurate information.

c.      The Company shall use its best efforts to make available for interviews or

testimony, as requested by the Fraud Section and the Office, present or former officers,

directors, employees, agents and consultants of the Company.  This obligation includes,

but is not limited to, sworn testimony before a federal grand jury or in federal trials, as

well as interviews with domestic or foreign law enforcement and regulatory authorities.

Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

   d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company consents to any and all disclosures to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1 *et seq.*, had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and the Office.

## **Payment of Monetary Penalty**

7.      The Fraud Section and the Office and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

   a.      The 2018 Sentencing Guidelines are applicable to this matter.

   b.      Offense Level.  Based upon USSG § 2C1.1, the total offense level is 36, calculated as follows:

| (a)(2) | Base Offense Level | 12 |
|--------|--------------------|----|
| (b)(1) | Multiple Bribes | +2 |

(b)(2)    Value of benefit received more than
          $25,000,000                                      +22

**TOTAL**                                                   36

c.    <u>Base Fine</u>.[1]  Based upon USSG § 8C2.4(a)(1), the base fine is

$58,970,000.

d.    <u>Culpability Score</u>.  Based upon USSG § 8C2.5, the culpability score is 8,

calculated as follows:

(a)       Base Culpability Score                            5

(b)(1)    the organization had 5,000 or more
          employees and an individual within high-
          level personnel of the organization
          participated in, condoned, or was willfully
          ignorant of the offense                           +5

(g)(2)    The organization fully cooperated in the
          investigation and clearly demonstrated
          recognition and affirmative acceptance of
          responsibility for its criminal conduct           -2

**TOTAL**                                                    8

e.    Calculation of Fine Range:

Base Fine                          $58,970,000

Multipliers                        1.6 (min) / 3.2 (max)

Fine Range                         $94,352,000 / $188,704,000

The Company and the Fraud Section and the Office agree, based on the application of the United

States Sentencing Guidelines, that the appropriate total criminal penalty is $75,481,600 ("Total

Criminal Penalty").  This reflects a 20 percent discount off the bottom of the applicable United

States Sentencing Guidelines fine range for the Company's remediation and cooperation.  The

---

[1] Because the conduct predates 2015, the 2014 Sentencing Guidelines have been used for calculation of the fine. *See* USSG § 8C2.4(e)(1) (2015).

Company and the Fraud Section and the Office further agree that the Company will pay the

United States $37,740,800, equal to 50 percent of the Total Criminal Penalty. The Company

agrees to pay $37,740,800 to the United States Treasury no later than ten business days after the

Agreement is fully executed. The Fraud Section and the Office agree to credit the remaining

amount of the Total Criminal Penalty against the amount the Company pays to Brazil, up to 50

percent of the Total Criminal Penalty, equal to $37,740,800, so long as the Company pays the

remaining amount to Brazil pursuant to the Company's separate resolution with Brazilian

authorities that addresses the same underlying conduct. In the event that the Company does not

pay Brazil any part of the $37,740,800 within 12 months after the Agreement is fully executed,

the Company will be required to pay the full remaining amount to the United States Treasury on

or before November 25, 2020. The Company and the Fraud Section and the Office agree that

this penalty is appropriate given the facts and circumstances of this case, including the factors

described in Paragraph 4(a) through 4(i). The Total Criminal Penalty is final and shall not be

refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud

Section and the Office that the Total Criminal Penalty is the maximum criminal monetary

penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are

not precluded from arguing in any future prosecution that the Court should impose a higher fine,

although the Fraud Section and the Office agree that under those circumstances, they will

recommend to the Court that any amount paid under this Agreement should be offset against any

fine the Court imposes as part of a future judgment. The Company acknowledges that no tax

deduction may be sought in connection with the payment of any part of the Total Criminal

Penalty. The Company shall not seek or accept directly or indirectly reimbursement or

indemnification from any source with regard to the Total Criminal Penalty or disgorgement

amounts that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the attached Statement of Facts.

### Conditional Release from Liability

8.      Subject to Paragraphs 14 through 18, the Fraud Section and the Office agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company relating to any of the conduct described in the attached Statement of Facts or the criminal Information filed pursuant to this Agreement. The Fraud Section and the Office, however, may use any information related to the conduct described in the attached Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

a.      This Agreement does not provide any protection against prosecution for any future conduct by the Company.

b.      In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company.

### Corporate Compliance Program

9.      The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities

include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

10.     In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anticorruption laws.  Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains:  (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anticorruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anticorruption laws.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

### Corporate Compliance Reporting

11.     The Company agrees that it will report to the Fraud Section and the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C.  These reports will be prepared in accordance with Attachment D.

### Deferred Prosecution

12.     In consideration of the undertakings agreed to by the Company herein, the Fraud Section and the Office agree that any prosecution of the Company for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term.  To the extent there is

11

conduct disclosed by the Company that is not set forth in the attached Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

13.      The Fraud Section and the Office further agree that if the Company fully complies with all of its obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire. Within six months after the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the attached Statement of Facts.

## Breach of the Agreement

14.      If, during the Term, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraphs 9 and 10 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Fraud Section and the Office become aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including, but not limited to, the charges in the

12

Information described in Paragraph 1, which may be pursued by the Fraud Section and the Office in the U.S. District Court for the Eastern District of Virginia or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Fraud Section's and the Office's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section and the Office is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

15.     In the event the Fraud Section and the Office determine that the Company has breached this Agreement, the Fraud Section and the Office agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Fraud Section and the Office in writing to explain the nature and circumstances of such

breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Fraud Section and the Office shall consider in determining whether to pursue prosecution of the Company.

16.     In the event that the Fraud Section and the Office determine that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Fraud Section and the Office or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office.

17.     The Company acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

14

18.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Fraud Section and the Office that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

19.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the attached Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Fraud Section's and the Office's ability to breach under this Agreement is applicable in full force to that entity. The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Company shall provide notice to the Fraud Section and the Office at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Fraud Section and the Office shall notify the Company prior to such transaction (or series of transactions) if it determines that

the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes

of this Agreement. At any time during the Term the Company engages in a transaction(s) that

has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the

Fraud Section and the Office may deem it a breach of this Agreement pursuant to Paragraphs 14

through 18 of this Agreement. Nothing herein shall restrict the Company from indemnifying (or

otherwise holding harmless) the purchaser or successor in interest for penalties or other costs

arising from any conduct that may have occurred prior to the date of the transaction, so long as

such indemnification does not have the effect of circumventing or frustrating the enforcement

purposes of this Agreement, as determined by the Fraud Section and the Office.

## Public Statements by Company

20.      The Company expressly agrees that it shall not, through present or future

attorneys, officers, directors, employees, agents or any other person authorized to speak for the

Company make any public statement, in litigation or otherwise, contradicting the acceptance of

responsibility by the Company set forth above or the facts described in the attached Statement of

Facts. Any such contradictory statement shall, subject to cure rights of the Company described

below, constitute a breach of this Agreement, and the Company thereafter shall be subject to

prosecution as set forth in Paragraphs 14 through 18 of this Agreement. The decision whether

any public statement by any such person contradicting a fact contained in the attached Statement

of Facts will be imputed to the Company for the purpose of determining whether it has breached

this Agreement shall be at the sole discretion of the Fraud Section and the Office. If the Fraud

Section and the Office determine that a public statement by any such person contradicts in whole

or in part a statement contained in the attached Statement of Facts, the Fraud Section and the

Office shall so notify the Company, and the Company may avoid a breach of this Agreement by

16

publicly repudiating such statement(s) within five business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the attached Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

21.     The Company agrees that if it, any of its direct or indirect subsidiaries or affiliates the Company majority-owns or otherwise controls issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Office and the Company; and (b) whether the Fraud Section and the Office have any objection to the release.

22.     The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Fraud Section and the Office are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

## Limitations on Binding Effect of Agreement

23.     This Agreement is binding on the Company and the Fraud Section and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Fraud Section and the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

## Notice

24.     Any notice to the Fraud Section and the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Chief - FCPA Unit, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue, NW, Washington, DC 20530 and Chief, Criminal Division, United States Attorney's Office for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Marcus Asner, Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019-9710. Notice shall be effective upon actual receipt by the Fraud Section or the Company.

18

**Complete Agreement**

25.     This Agreement, including its attachments, sets forth all the terms of the

agreement between the Company and the Fraud Section and the Office.  No amendments,

modifications or additions to this Agreement shall be valid unless they are in writing and signed

by the Fraud Section and the Office, the attorneys for the Company and a duly authorized

representative of the Company.

**AGREED:**

**FOR SAMSUNG HEAVY INDUSTRIES CO. LTD.:**

Date: 11/22/19

Hyun-Dong Lee
Samsung Heavy Industries Company Ltd.

Date: 11/22/19

Marcus A. Asner
Soo-Mi Rhee
Arnold & Porter Kaye Scholer LLP

**FOR THE DEPARTMENT OF JUSTICE:**

G. ZACHARY TERWILLIGER
United States Attorney
Eastern District of Virginia

Uzo Asonye, Assistant U.S. Attorney

Date: 11/22/19

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
United States Department of Justice

Jonathan P. Robell, Trial Attorney
Andrew Gentin, Acting Assistant Chief
Brian R. Young, Deputy Chief

19

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Samsung Heavy Industries Company Limited (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the General Counsel for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 11/22/19

SAMSUNG HEAVY INDUSTRIES CO. LTD.

Hyun-Dong Lee
General Counsel

## CERTIFICATE OF COUNSEL

I am counsel for Samsung Heavy Industries Company Ltd. (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the General Counsel of the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 11/22/19

Marcus A. Asner
Soo-Mi Rhee
Arnold & Porter Kaye Scholer LLP
Counsel for Samsung Heavy Industries Co. Ltd.